IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NEW DAY FARMS, LLC,

  Plaintiff           Case No. 2:08-cv-01107

 v.              Judge Graham

BOARD OF TRUSTEES OF YORK     Magistrate Judge Kemp
TOWNSHIP, OHIO, et al.,

  Defendants.

**ORDER**

This matter is before the court on the motion of defendants Northwest Neighborhood Alliance ("NNA") and Pamela D. Williams ("Williams") (collectively, "defendants") to dismiss the first amended complaint of plaintiff New Day Farms, LLC ("New Day") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. Rule 12(b)(6). Plaintiff contends that the moving defendants conspired with public officials to pass an illegal fire safety code for the sole purpose of discriminating against plaintiff, an out-of-state egg farm company, and plaintiff's Spanish speaking employees.

**I. FACTS**

Plaintiff New Day is a Minnesota limited liability company that operates a poultry farm in York Township, Union County, Ohio (hereinafter "township"). Defendant NNA is an unincorporated association under the laws of Ohio with its principal place of business in York Township. Defendant Williams is an Ohio resident living in York Township and is the president

1

of NNA. Co-defendants in this action include the Board of Trustees of York Township ("Board"), Board member Judy Christian, Board Member John Oates, Board Member Mike Brake, and Donald Detrick, chief of the Bokescreek Township Fire Department and York Township "Fire Prevention Officer."

In June of 2007, New Day purchased a poultry farm in York Township. This poultry farm had been operated since 1975 by the Daylay Egg Company. New Day's poultry farm constitutes "agriculture" as defined in Ohio Rev. Code §519.01 and is regulated by the Ohio Department of Agriculture (ODA). On May 5, 2008, the ODA authorized New Day to install four new and environmentally-improved poultry barns to replace four old barns. (Ex. 3 to Complaint). In reliance upon this permit, and the fact that York Township's Zoning Inspector had exempted the farm as "agriculture," New Day began the renovation work. The renovation work will cost New Day millions of dollars, some of which has already been expended.

In February of 2008, prior to the ODA's issuance of the permit to New Day, the Board held a meeting at which the necessity for a township fire code was discussed. According to minutes of Board meetings dating back to 1975, this was the first time the Board had ever considered a fire code. On June 2, 2008, the Board adopted the "York Township Fire Safety Regulations and Rules" (hereinafter "fire code"). Plaintiff asserts that this fire code is nothing more than a pretext for impermissibly regulating New Day's agricultural operations and that the fire code is not uniformly applied in York Township. Plaintiff also asserts that the fire code was illegally adopted and is not enforceable.

Although the moving defendants are not members of the Board, plaintiff asserts that these defendants motivated the Board to enact the discriminatory fire code. According to

plaintiff, defendants are ardent opponents of the development of poultry farms by out of state corporations in York Township and have engaged in activities such as selling signs and buttons and literature opposing such developments. Defendants were provided use of the York Township Hall free of charge by the Board in order to hold meetings dedicated to planning strategies to oppose the development of poultry farms by out of state corporations. Plaintiff asserts that defendants NNA and Williams seek to discriminate against out of state poultry farms and toward the Hispanic population of employees of the poultry farms.

On the basis of these facts, plaintiff asserts claims against defendants NNA and Williams for conspiracy to deprive New Day of equal protection of the law in violation of 42 U.S.C. §1983, 42 U.S.C. §1985(3) and for civil conspiracy. Plaintiff seeks declaratory judgment and injunctive relief as well as attorney's fees.

## II. STANDARD OF REVIEW

In ruling on a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in a light most favorable to the plaintiff, accept all well-pleaded allegations in the complaint as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Bishop v. Lucent Technologies, Inc., 520 F.3d 516, 519 (6th Cir. 2008); Harbin-Bey v. Rutter, 420 F.3d 571, 575 (6th Cir. 2005). To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Id.

While the complaint need not contain detailed factual allegations, the "[f]actual allegations must be enough to raise the claimed right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must create a reasonable expectation that discovery will reveal evidence to support the claim. Campbell v. PMI Food Equipment Group, Inc., 509 F.3d 776, 780 (6th Cir. 2007). A complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009). Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Id. Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed.R.Civ.P. 8(a)(2). Ibid.

Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555; see also Ashcroft, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint

4

reveals that there is an insurmountable bar to relief. Rauch v. Day & Night Mfg. Corp., 576 F. 2d 697 (6th Cir. 1978).

## III. ANALYSIS

### A. Whether the *Noerr-Pennington* First Amendment Doctrine Immunizes Defendants from all of New Day's Claims.

The First Amendment to the U.S. Constitution "guarantees the right of the people to petition the government for a redress of grievances." Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) (citing U.S. Const. amend I). A party who exercises his first amendment right to petition is immune from civil liability in section 1983 and 1985 actions pursuant to the *Noerr-Pennington* doctrine. Knology, Inc. v. Insight Communs. Co., L.P., 393 F.3d 656, 658 (6th Cir. 2004) (citing Eaton v. Newport Bd. of Educ., 975 F.2d 292, 298 (6th Cir. 1992)) (the *Noerr-Pennington* doctrine "immunizes parties from liability under antitrust laws or § 1983 for actions taken when petitioning authorities to take official action"); Conlara, Inc. v. Runkel, 722 F. Supp. 1442 (1985) (courts have held that the *Noerr-Pennington* doctrine shields defendants from civil conspiracy allegations). A defendant's motive for its conduct in petitioning for a certain result is irrelevant because as long as there is petitioning activity, the motivation behind the activity is unimportant. Chantilly Farms, Inc. v. West Pikeland Twp., No. 00-3903, 2001 U.S. Dist. LEXIS 3328 (E.D. Pa, Mar. 23, 2001).

Plaintiff concedes that the *Noerr-Pennington* doctrine may apply to civil conspiracy claims but urges this court to conclude that the doctrine is inapplicable in this case because the defendants' actions fall within the very narrow exception to the doctrine. This narrow "sham" exception covers cases where the "defendant intended to use the petitioning process merely to

harass the plaintiff." Eaton v. Newport Bd. of Educ., 975 F.2d 292, 298 (6th Cir. 1992)(citations omitted). The Sixth Circuit has held that "the key to the sham exception under the *Noerr-Pennington* doctrine is an improper interference with governmental processes. Improper interference is illegal reprehensible practices such as perjury, fraud, conspiracy with or bribery of governmental decision makers, or misrepresentation, or is so clearly baseless as to amount to an abuse of process." Westmac, Inc. v. Smith, 797 F.2d 313, 317 (6th Cir. 1986) (citing Razorback Ready Mix Concrete Co. v. Weaver, 761 F.2d 484 (8th Cir. 1985)).

According to the plaintiff, the sham exception applies in this case because the defendants petitioned the Board to regulate plaintiff's poultry farm even though defendants knew that the Board had no authority to regulate agriculture. Plaintiff argues that the defendants' action of petitioning the local government to adopt a fire code in order to usurp the ODA's authority was "sham" petitioning and therefore not protected under the *Noerr-Pennington* doctrine. The plaintiff's argument is without merit. According to the plaintiff's complaint, defendants petitioned the government for the purpose of prohibiting the expansion of the plaintiff's poultry farm. "Petitioning a local government to pass specific legislation is the kind of political speech at the heart of First Amendment protection." Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 301 (6th Cir. 2008). The defendants sought a response from the government and sham petitioning is not properly alleged or inferred from complaints which make it clear that the defendants "genuinely sought a government response to or action upon their complaints." Creek v. Village of Westhaven, No. 83 C 1851, 1984 U.S. Dist. LEXIS 22418 (N.D. Ill, Oct. 26, 1984).

Furthermore, petitioning that actually results in governmental action is not sham petitioning. See Allied Tube & Conduit Corp. v. Indian Head, Inc. 486 U.S. 492, 502 (1988) (stating that the effort to influence governmental action could not be characterized as a sham given that government action was in fact taken); Prof'l Real Estate Investors v. Columbia Pictures Indus., 508 U.S. 49, 58 (1992) (a successful effort to influence governmental action cannot be characterized as a sham). In the complaint, the plaintiff asserts that defendants successfully petitioned the Board to adopt the fire code.

Defendants are entitled to immunity from all of plaintiff's claims against it under the *Noerr-Pennington* doctrine and plaintiff has failed to allege facts which would place the defendants' actions within the narrow sham exception to the doctrine.

### B. Whether the Plaintiff's Complaint States a Claim for Relief Sufficient to Withstand Defendants' Civ. R. 12(b)(6) Motion to Dismiss.

#### 1. 42 U.S.C. §1983

In order to establish a claim for a 42 U.S.C. §1983 civil conspiracy claim, plaintiff must come forward with factual allegations showing: 1) the existence of a conspiracy and 2) an actual deprivation of a right secured under the Constitution by persons acting under the color of state law. BPNC, Inc. v. Taft, 3:02-CV-7620, 2003 U.S. Dist. LEXIS 10702 (N.D. Ohio, June 18, 2003) (there must be specific factual allegations showing the existence of the conspiracy, as well as allegations that the conspiring defendants acted with the specific intent to deprive the plaintiff of equal protection of the law).

#### a. Existence of a conspiracy

Plaintiff alleges that the moving defendants "acted under color of state law by acting jointly with and conspiring with" the state co-defendants. (Amended Complaint ¶¶ 5, 8, 9). However, plaintiff does not provide any factual allegations of a plan or agreement between the defendants and the Board to violate its rights under 42 U.S.C. § 1983. See Smith v. Johnston, No. 98-1034, 1999 U.S. App. LEXIS 3863 (6th Cir. Mar. 5, 1999) ( plaintiff failed to plead material facts to support his claim that the defendants engaged in a single plan or an agreement to violate his rights under §1983). Even with a liberal reading of the complaint, the only factual allegations that could conceivably be considered to be in support of the conspiracy allegation are: 1) defendants were allowed to hold a meeting opposing the plaintiff's farm on township property free of charge, and 2) that the township trustees expressed regret at their inability to regulate the farm in an advertisement sponsored by defendant NNA. These allegations simply do not establish with any plausibility that a conspiracy existed to violate plaintiff's rights under section 1983 by enacting the township fire code.

      **b.**    **An actual deprivation of a right secured under the Constitution by persons acting under the color of state law**.

In order to state a claim under section 1983, plaintiff must come forward with factual allegations showing that the defendants were acting under the color of state law at the time of the alleged conspiracy. A defendant's actionable conduct is under color of state law when the defendant possessed the power to act by virtue of state law and misused that power to deprive plaintiffs of a federal right. Beamer v. Bd. of Coshocton County Comm'rs, No. 2:07-cv-00067, 2008 U.S. Dist. LEXIS 14262 (S.D. Ohio, Feb. 26, 2008) (citing Cassady v. Tackett, 938 F.2d 693, 695 (6th Cir. 1991)). Put differently, "private actors can only be held liable under section

8

1983 if their 'actions so approximate state action that they may be fairly attributed to the State.'" Riester v. Riverside Cmty. Sch., 257 F. Supp. 2d 968, 971 (S.D. Ohio 2002) (quoting Lansing v. City of Memphis, 202 F.3d 821, 828 (6th Cir. 2002)). The Supreme Court has articulated four tests to determine whether private conduct may be attributed to the state: the public function test, the state compulsion test, the symbiotic relationship or nexus test, and the entwinement test. Riester, 257 F. Supp. 2d at 971 (citing Lansing v. City of Memphis, 202 F.3d 821, 828 (6th Cir. 2002) (setting out first three tests) and Brentwood Acad. V. Tennessee Secondary Sch. Athletic Assoc., 531 U.S. 288 (2001) (establishing the fourth test).

In its Memorandum in Opposition to defendant's motion, plaintiff argues that the defendants engaged in state action under both the public function test and the symbiotic relationship/nexus test.

### 1. Public Function Test

Under the public function test, the question is whether the private entity "exercises powers which are traditionally exclusively reserved to the state." Riester, 257 F. Supp. 2d at 971 (internal citations omitted). The "threshold is high for a private actor to meet the public function test and the Sixth Circuit interprets the public function test narrowly." Bowersock v. City of Lima, No. 3:07 CV 730, 2008 U.S. Dist. LEXIS 31480 (N.D. Ohio Apr. 16, 2008) (citing Chapman v. Higbee Co., 319 F.3d 825, 833 (6th Cir. 2003)).

Plaintiff asserts that defendants actions clearly involved the public functions of fire service or zoning. There are several problems with plaintiff's argument. First, the defendants have not engaged in fire service nor have the defendants been involved in zoning in the township. Moreover, the Sixth Circuit has previously held that, because pursuant to Ohio Rev.

Code §§ 9.60(B)-(C) any governmental entity can contract with a private agency to provide firefighting services, "firefighting and emergency medical services are 'not powers which are traditionally exclusively reserved to the state' of Ohio." <u>Cornett v. Mason Volunteer Fire Co.</u>, No. 95-3010, 1996 U.S. App. LEXIS (6th Cir. May 8, 1996). Defendants are not state actors under the public function test.

### 2. Symbiotic Relationship/Nexus Test

Plaintiff also asserts that the defendants are state actors pursuant to the symbiotic relationship or nexus test. Under this test, the question is whether "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." <u>Wolotsky v. Huhn</u>, 960 F.2d 1331, 1335 (6th Cir. 1992). Plaintiff asserts that the following factual allegations suggest a symbiotic relationship[1] and prohibit dismissal of this claim: 1) co-defendant Judy Christian, who is both a member of NNA and a member of the Board, first announced the need for the Board to adopt a fire code; 2) Christian urged the adoption of the fire code even though she knew that only the ODA could regulate the poultry farm; 3) the Board gave defendants NNA and Williams use of the township property rent-free where defendants held meetings aimed at opposing the expansion of the out-of-state poultry farm and where defendants passed out signs, buttons and flyers with their message.

The fact that Christian is both a member of the board and NNA does not suggest a symbiotic relationship. <u>Gross v. Fond Du Lac County Agric. Soc'y, Inc</u>., No. 04-C-287, 2005

---

[1] Plaintiff asserts that it should be afforded the opportunity to conduct discovery to more fully disclose the symbiotic relationship between the township and NNA.

U.S. Dist. LEXIS 19537 (E.D. Wis. Sept 6, 2005) (fact that a small percentage of the private group's membership was comprised of county supervisors was not sufficient to establish a close nexus between the private entity and the state); Lansing v. City of Memphis, 202 F.3d 821, 831 (6th Cir. 2000) ( the presence of public officials on a private company's board does not make the private company's actions attributable to the state); compare, Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 299-300 (2001) (close nexus found where 84% of the private athletic organization's members were public school officials and that those officials were acting in their official capacity when working on behalf of the association). Thus, the fact that there may be small overlap between members of the Board and NNA is insufficient to establish the necessary level of entwinement to find a close nexus.

There is also no basis for finding a symbiotic relationship between NNA and the board on the basis of the fact that NNA used the township property free of charge for holding its meetings. Plaintiff makes no allegation that the township usually charges private groups for the use of the town hall nor the amount usually charged. It may well be that the township lets all private groups use township property free of charge or for a nominal fee. Moreover, "neither the public funding of a private entity, nor a private entity's use of public land, is enough to establish a symbiotic relationship." Probst v. Cent. Ohio Youth Ctr., 511 F. Supp. 2d 862, 868 (S.D. Ohio 2007)(citations omitted); Cornett v. Mason Volunteer Fire Co., No. 95-3010, 1996 U.S. App. LEXIS (a private entity's lease and use of public property, even for a nominal fee, does not convert its conduct into state action).

Finally, even if the Board enacted the fire code at the recommendation of NNA or Williams, "a public entity's actions in compliance with a private entity's recommendations do

11

not convert the private entity into a state actor." Daniels v. Retired Senior Volunteer Program, No. 2:05-cv-0114, 2006 U.S. Dist. LEXIS 16999 (S.D. Ohio Mar. 27, 2006) (citing Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 193-96 (1998)). Accordingly, defendants are not state actors under the symbiotic relationship/nexus test.

The plaintiff has failed to state a claim against the defendants for civil conspiracy under 42 U.S.C. §1983.

### 2. 42 U.S.C. §1985 (3)

42 U.S.C. § 1985 prohibits conspiracies interfering with civil rights. To state a claim for relief under 42 U.S.C. §1985(3), a complaint must allege that defendants "1) conspired 2) for the purpose of depriving any person or class of the equal protection of the laws, and that 3) one or more of the conspirators committed an act in furtherance of the conspiracy, 4) 'whereby another was injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.'" Domokur v. Milton Township Bd of Trustees, No. 4:07CV00247, 2007 U.S. Dist. LEXIS 66710 (N.D. Ohio Sept. 10, 2007) (citations omitted). A plaintiff seeking relief under section 1985(3) "must plead his civil rights conspiracy charge with factual specificity; mere conclusory allegations will not survive a motion to dismiss." Id (citing Ashiegbu v. Purvieance, 76 F. Supp. 2d 824, 830 (S.D. Ohio 1998).

An additional requirement of a section 1985 action is that the claim must be based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); O'Neill v. Grayson County War Memorial Hospital, 472 F.2d 1140 (6th Cir. 1973) (a section 1985(3) claim "must be founded on a class-based invidious discrimination."). That is, 42 U.S.C. § 1985(3) covers

"only those conspiracies against: (1) classes who receive heightened protection under the Equal Protection Clause; and (2) those individuals who join together as a class for the purpose of asserting certain fundamental rights." Warner v. Greenbaum, Doll & McDonald, 104 Fed. Appx. 493, 498 (6th Cir. 2004) (citations omitted). A class covered under section 1985(3) must be "more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269 (1993).

The plaintiff alleges that the defendants' conduct was motivated by invidiously discriminatory animus towards: 1) out-of-state poultry farms and 2) Hispanic workers employed by out-of-state poultry farms. According to plaintiff, the defendants as "in-state" persons have imposed a burden upon plaintiff, an "out of state" corporation, which is not also imposed upon other in-state businesses or persons. Plaintiff argues that this is the type of class based invidious discrimination that section 1985(3) covers. This argument is meritless. As an initial matter, the defendants have not imposed a burden upon plaintiff because defendants did not and could not enact any regulations which would infringe on plaintiff's property rights. More fatal to the plaintiff's position, however, is that "out-of-state businesses" are not a class of persons "identified by 'immutable characteristics' for which they bear no responsibility and who have suffered historically pervasive discrimination." Dover v. Marine Transport Lines, No. 89-5600, 1991 U.S. Dist. LEXIS 14319 (E.D. Pa Oct. 2, 1991) (citing Novotny v. Great American Federal Savings & Loan Assoc., 584 F.2d 1235, 1241-44 (3d Cir. 1978)) (describing the type of "class" of persons section 1985(3) covers); Askew v. Bloemker, 548 F.2d 673 (7th Cir. 1976) (the "class-based, invidiously discriminatory animus" required by the statute must be "based on race, ethnic origin, sex, religion, [or] political loyalty"). Moreover, section 1985(3) does not

13

reach conspiracies "motivated by economic or commercial animus." United Brotherhood of Carpenters and Joiners v. Scott, 463 U.S. 836, 838 (1983); Warner v. Greenbaum, Doll & McDonald, 104 Fed. Appx. 493, 498 (6th Cir. 2004) (conspiracies motivated by economic or commercial animus are not actionable under § 1985(3)).

Plaintiff also attempts to base its section 1985(3) claim on defendants' discriminatory animus towards New Day's Hispanic employees and workers of other national origins. In its complaint, New Day sets forth statements attributed to defendant Williams in which she expresses concern over an influx of immigrants and the use of out of state labor associated with New Day's operations. Plaintiff also sets forth similar statements from other individuals which it alleges "reflect the views" of the moving defendants. (Amended Complaint at ¶105(4)-(8)). Upon these allegations, New Day rests its claim that the defendants were motivated by their animus towards Hispanic and/or non-local employees to enact the fire code. The court cannot find, and the Plaintiff has not cited to, any Sixth Circuit case in which a plaintiff who is not a member of a class is allowed to bring a section 1985(3) claim on behalf of that class and the court is not inclined to do so here. Accordingly, plaintiff has failed to state a claim against these defendants for violation of 42 U.S.C. §1985(3).

The plaintiff's federal claims against defendants NNA and Williams are dismissed. The court declines to exercise supplemental jurisdiction over the remaining state law claims asserted against defendant NNA and Williams and those claims are dismissed as well. See, Woods v. Lagrange, No. 3:05 CV 7060, 2006 U.S. Dist. LEXIS 6872 (N.D. Ohio Feb. 23, 2006) (court has discretion to decline to exercise supplemental jurisdiction over state claims once federal claims have been dismissed).

## III.     CONCLUSION

For the foregoing reasons, Defendants NNA and Williams' Motion to Dismiss (doc. 45 ) is GRANTED.  The clerk shall enter final judgment in favor of the defendants Williams and NNA dismissing Plaintiff's complaint against these defendants only with prejudice at Plaintiff's cost.

IT IS SO ORDERED.

                                                S/ James L. Graham  
                                                James L. Graham  
                                                UNITED STATES DISTRICT JUDGE

Date: November 17, 2009